Aileen E. Cohen, Esq.
Nev. Bar. No. 005263
Michael C. Mills, Esq.
Nev. Bar. No. 003534
Bauman Loewe Witt & Maxwell, PLLC
3650 North Rancho Drive, Suite 114
Las Vegas, Nevada 89130
Telephone: (702) 240-6060
Facsimile: (720) 240-4267

Counsel for Defendant
LAZER SPOT, INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LEPATRICK FEATHERSTON, and individual, on behalf of himself and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LAZER SPOT, INC., a foreign corporation; EMPLOYEE(S)/AGENT(S) DOES I-X; and ROE CORPORATIONS XI-XX, inclusive,<br><br>Defendants. | Case No. 2:17-cv-01221-APG-GWF<br><br><br>**DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

Defendant Lazer Spot, Inc. ("Lazer Spot"), by its attorneys, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, hereby moves for summary judgment on Plaintiff's claims for overtime wages under the Fair Labor Standards Act and N.R.S. § 608.018. This Motion is made on the grounds that Lazer Spot properly classified Plaintiff as an exempt employee pursuant to the Motor Carrier Act exemption. This Motion is based on the Memorandum of Points and Authorities, the pleadings and records on file with this Court, the exhibits attached hereto, and any evidence and argument as may be presented at or before a hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiff seeks to recover alleged unpaid overtime under federal and state law, but the undisputed evidence establishes that Plaintiff was subject to the Motor Carrier Act exemption ("MCE") to the Fair Labor Standards Act ("FLSA") and Chapter 608 of the Nevada Revised Statutes.  The MCE is an overtime exemption for employees who are subject to the authority of the Secretary of Transportation pursuant to the Motor Carrier Act of 1935 ("MCA").  In this Circuit, an employee is exempt under the MCE if he or she is "(1) employed by an employer subject to the jurisdiction of the Secretary of Transportation, and (2) 'engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.'"  *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2015 WL 1469752, at *3 (D. Ariz. Mar. 30, 2015) (quoting 29 C.F.R. § 782.3(a)).

Plaintiff's claims fail for the simple reason that he admitted at his deposition the elements necessary to establish the MCE.  In particular, he admitted that (1) Lazer Spot was subject to the jurisdiction of the Department of Transportation; and (2) he regularly transported goods bound for out-of-state destinations and, in doing so, he completed one leg of a larger interstate trip.  The interstate journeys in which Plaintiff participated began at a pallet distribution facility in Northern Las Vegas run by Greatwide Distribution Logistics.  At its Northern Las Vegas facility, Greatwide builds CHEP pallets used to carry items from Nevada to locations all over the United States.  As a driver for Lazer Spot, Plaintiff regularly retrieved CHEP pallets from the Greatwide facility and transported them over public roads to an Americold ice cream distribution facility and a Unilever ice cream manufacturing plant.  There, workers loaded ice cream products onto the CHEP pallets and the ice cream-laden pallets were shipped to locations outside of Nevada, such as Arizona, California, Oregon, Washington, Tennessee, Missouri, and Guam.  The interstate transport of the CHEP pallets was triggered by customer orders.  Once a customer ordered the ice cream, the pallets became necessary to fulfill the order.  The pallets then traveled

from Nevada to myriad locations across the country, and Plaintiff completed the first leg of the transportation of these goods in interstate commerce. Courts have routinely held that drivers who drive within a single state, and who complete one leg of an interstate trip, are exempt pursuant to the MCE. There is simply no dispute in the material facts relating to the application of the MCE to Plaintiff. Accordingly, Lazer Spot should be granted Summary Judgment on Plaintiff's claims under the FLSA and Nevada state law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Lazer Spot Is A Licensed Federal Motor Private Carrier

As Plaintiff admitted at his deposition, Lazer Spot is a federal motor private carrier licensed by the DOT. (Featherston Dep.[1] at 35:7-36:2; Jan. 12, 2018 Declaration of R. Wilcox ("Wilcox Decl.") at ¶ 3.[2]) The Company provides transportation and yard management services to various plants, mills, and consumer-goods companies across the United States. (Wilcox Decl. at ¶ 4.) Among the services it provides its clients is spotting (moving loaded and empty trailers between two or more points, often in and around a client's facility, and sometimes offsite) and shuttling (transporting loaded or unloaded trailers over public roads to and from a client's facility). (*Id.*) Lazer Spot temporarily possesses and transports the customers' property as part of its contractual agreement with its customers. (*Id.* at ¶ 5.)

On a biennial basis, Lazer Spot registers with the U.S. Federal Motor Carrier Safety Administration ("FMCSA"), a unit of the U.S. Department of Transportation ("DOT"), because the State of Nevada and the federal government consider Lazer Spot to be an interstate carrier with vehicles weighing over 10,000 pounds. (Wilcox Decl. at ¶ 6.) The DOT assigned Lazer Spot the DOT identification number of 850629. (*Id.* at ¶ 3.)

---

[1] Excerpts of Plaintiff's deposition are attached hereto as Exhibit 1.

[2] Ms. Wilcox's declaration is attached hereto as Exhibit 2.

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

**B.** **Plaintiff Drove On Public Roads Transporting Goods In The Continuous Stream Of Interstate Commerce**

Plaintiff began working as a driver for Lazer Spot on February 11, 2015.[3] (Featherston Dep. at 14:21-15:3, 39:4-16; Aldan Dep.[4] at 18:15-19.)  Plaintiff worked almost exclusively out of an Americold facility in Henderson, Nevada, where Lazer Spot provided various yard services, including spotting and shuttling.  (Featherston Dep. at 26:16-27:3; Plaintiff's Answer to Lazer Spot Interrogatory No. 4;[5] Jan. 12, 2018 Declaration of J. Aldan ("Aldan Decl."),[6] at ¶ 5.)[7] The Americold facility distributes Unilever ice cream products to customers throughout the country.  (Featherston Dep. at 50:19-51:19; Wilcox Dep.[8] at 34:5-13.)[9]  For example, ice cream products manufactured at a Unilever facility in Sikeston, Missouri may be shipped to Americold, loaded on a trailer with other Unilever ice cream products manufactured at other sites, and then shipped to customers throughout the country and beyond, including Arizona, California, Oregon,

---

[3] When Lazer Spot hired Plaintiff, Plaintiff's supervisor was Jerry Gale.  (Featherston Dep. at 15:8-20.)  In approximately July 2015, Lazer Spot promoted Jessica Aldan to a manager position and she began managing Plaintiff.  (*Id*. at 9:6-8; Aldan Dep. at 11:18-12:3, 19:4-16.)

[4] Excerpts of Ms. Aldan's deposition are attached hereto at Exhibit 3.

[5] Plaintiff's Answers to Lazer Spot's Interrogatories are attached hereto at Exhibit 4.

[6] Ms. Aldan's declaration is attached hereto at Exhibit 5.

[7] On two or three occasions, Plaintiff worked at an Amazon facility serviced by Lazer Spot. (Featherston Dep. at 25:11-14; Aldan Dep. at 31:5-20.)  On the occasions when Plaintiff worked at Amazon, he transported pallets loaded with Amazon goods over public roads.  (Featherston Dep. at 25:9-15.)  These goods were shipped in from locations around the United States.  (*Id*. at 92:12-17.)

[8] Excerpts of Ms. Wilcox's deposition are attached hereto at Exhibit 6.

[9] Unilever manufactures a variety of ice cream brands, including Magnum, Ben and Jerry's, and Breyers.  (Wilcox Dep. at 34:6-8.)

Washington, Tennessee, Missouri, and Guam. (Wilcox Dep. at 34:5-13, 48:11-49:3; Featherston Dep. at 50:19-51:19; Aldan Dep. at 28:11-16.) Plaintiff was aware that the product was destined to leave Nevada because he saw invoices detailing the final destination of the ice cream and pallets, and he spoke with some of the drivers transporting the goods to their final destinations. (Featherston Dep. at 51:20-52:24.) Indeed, a review of a sampling of gate schedules from the Americold facility establishes that over-the-road drivers regularly picked up loaded trailers from Americold and transported them out of state. (Aldan Del. at ¶ 8, Ex. D.)

The Unilever ice cream products are required to be shipped on CHEP pallets. (Aldan Dep. at 47:2-16; Featherston Dep. at 54:7-9; Aldan Decl. at ¶ 5.) Unilever/Americold would request that a Lazer Spot driver pick up CHEP pallets from Greatwide Distribution Logistics, located in Northern Las Vegas. (Aldan Decl. at ¶ 6.) Lazer Spot would then send Plaintiff or another Lazer Spot driver to pick up the CHEP pallets and deliver them to the Americold site or to a Unilever ice cream manufacturing facility on Olsen Street. (*Id.*; Featherston Dep. 28:3-29:17.) The drive from the Americold and Unilever sites to the Greatwide facility and back took Plaintiff approximately one and one half hours to complete. (Featherston Dep. at 28:23-29:3, 105:17-106:10.) The entire trip was on public roads, including but not limited to U.S. Highway 95, Charleston Boulevard, Lamb Boulevard, and Cheyenne Avenue. (*Id.* at 22:17-22:19; Plaintiff's Answer to Interrogatory No. 5.) Plaintiff testified that the vehicles he operated as a driver for Lazer Spot weighed in excess of 10,000 pounds, and documents produced by Lazer Spot confirm this fact. (Featherston Dep. at 18:23-19:4; Aldan Decl. at ¶ 9, Ex. E.)

Plaintiff sometimes made several "CHEP runs" a day, and, as a result, spent four to five hours of a single shift on those days transporting CHEP pallets over public roads between the Americold/Unilever sites and the Greatwide facility. (Featherston Dep. at 104:22-106:13.) He regularly performed these CHEP runs. (*Id.* at 29:18-30:11.) Plaintiff testified that he completed at least one CHEP run a month, and he sometimes did a lot more. (*Id.*) An analysis of Lazer Spot documents indicates that Plaintiff averaged over three CHEP runs per month during his employment. (Aldan Del. at ¶ 7.) After Plaintiff delivered the CHEP pallets to Americold and

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

Unilver, ice cream products were loaded on the pallets, placed in trailers, and then picked up by

over the road drivers and transported throughout the United States.  As Plaintiff testified:

> Q.    And the ice cream that was headed off to those other states were loaded on
>        top of the pallets?
> A.    Yes, sir.
> Q.    And those pallets are the runs that you retrieved from the -- from the
>        CHEP location?
> A.    Yes, sir.
> Q.    Greatwide?
> A.    Yes, sir.
> Q.    And those pallets would come through from Greatwide to Unilever or
>        Americold and then head out to another state packed with ice cream?
> A.    Yes, sir.
> Q.    And especially during the busy season, the warm months, those pallets
>        were moving pretty quickly from where you brought them back at Olsen
>        Road --
> A.    Swiftly, yes, sir.

(Featherston Dep. at 52:19-53:9.)

The CHEP pallets moved "swiftly" through the Americold and Unilver facilities.

(Featherston Dep. at 53:6-9.)  Plaintiff testified that some of the CHEP pallets would be loaded

with ice cream and shipped out of state the same day he picked the pallet up at Greatwide.  (*Id.* at

92:18-93:1.)  In fact, the Americold facility could go through an entire trailer of CHEP pallets

within two days, meaning that on those occasions, none of the pallets he delivered sat at the

facility for longer than two days before they were shipped throughout the United States.  (*Id.* at

53:14-16.)

**C.    Plaintiff Engaged In Activities Directly Affecting The Safety Of**
**Operation Of Motor Vehicles**

As a driver required to operate a commercial motor vehicle on public roads, Plaintiff was

subject to various requirements under the Federal Motor Carrier Safety Regulations ("FMCSR"),

as well as Lazer Spot policies intended to ensure the safety of its drivers and the public at large.

(Wilcox Dep. at 21:18-22:16, 22:25-23:23.)  Pursuant to the FMCSR, Lazer Spot performed pre-

hire checks on Plaintiff, Plaintiff had and maintained a commercial driver's license the entire

time he worked for Lazer Spot, Plaintiff passed a DOT physical examination, passed a road test,

and during each year of Plaintiff's employment with Lazer Spot, the Company confirmed

Plaintiff's driving record by obtaining a copy of Plaintiff's motor vehicle report. (Aldan Decl. at ¶ 3, Ex. A.) Plaintiff was also required to conduct pre-trip safety inspections every day he operated his commercial motor vehicle for Lazer Spot. (*Id.*)

In addition to the FMCSR requirements, Lazer Spot required Plaintiff to participate in new driver training and training regarding the safe operation of a vehicle on public roads. (Featherston Dep. at 71:24-74:21, 79:10-80:2, Ex. 6 at LSF 000046-48; Aldan Decl. at ¶ 4, Ex. B.) Plaintiff was trained on, among other things, how to properly secure trailers to truck cabs before moving trailers and the use of trailer doors safety straps. (Wilcox Dep. at 20:4-21:17.) Plaintiff was also required to review quarterly safety training documents and sign them confirming his understanding of the information contained in the document, including that he was required to operate commercial motor vehicles on public roads. (Featherston Dep. at 56:8-57:2, Ex. 4.)

Plaintiff, like other drivers, was subject to immediate termination of his employment for: (i) citations for serious moving violations and/or reckless driving; (ii) failure to notify the company within 48 hours of any moving violation or license suspension; (iii) leaving the scene of an accident; or (iv) taking an unauthorized passenger in a company or customer-owned or leased vehicle. (Featherston Dep. at 61:11-24, Ex. 5 at LSF 000251.) The purpose of these immediate termination policies was to keep drivers safe on public roads. (Featherston Dep. at 61:25-62:2.)

Plaintiff was terminated in January 2017 because he refused to make a CHEP run. (Featherston Dep. at 39:9-43:10.)

**D.    Plaintiff's Compensation**

Prior to beginning work for Lazer Spot and during his employment, Plaintiff understood that Lazer Spot would pay him a straight hourly wage for all hours worked. (Featherston Dep. at 15:4-16:3, 45:8-14.) At the time Lazer Spot hired Plaintiff, both Jerry Gale and Jessica Aldan explained to Plaintiff that he would receive a set hourly wage for all hours Plaintiff worked. (*Id.* at 15:4-16:3.) When he began working for Lazer Spot, Plaintiff earned an hourly wage of

$16.00. (Aldan Decl. at ¶ 10.) He later received a raise to $16.50, which was his hourly rate of pay at the time of his termination. (*Id.*)

Plaintiff read and understood the Lazer Spot Employee Handbook provided to him at the time of his hire, which contained an explanation of how Plaintiff would be paid as a driver for Lazer Spot. (Featherston Dep. at 16:8-22.) Specifically, the Employee Handbook contained the following statement: "Lazer Spot does not pay an overtime rate of 1.5 times the hourly wage. All hours after 40 are paid at the regular hourly rate pursuant to 29 U.S.C. Section 213(b)." (*Id.* at 62:15-23, Ex. 5 at LSF 000257.) Plaintiff read and agreed to this language when he was hired by Lazer Spot. (Featherston Dep. at 62:15-23.)

## III.   ARGUMENT

### A.   Legal Standard For Summary Judgment

A court must grant summary judgment when the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to 'set forth specific facts showing that there is a genuine issue for trial.'" *Winston v. Air Truck Exp., Inc.*, No. 2:13-cv-01167-JAD-GWF, 2016 WL 344504, at *2 (D. Nev. Jan. 27, 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

Plaintiff "'must do more than simply show that there is some metaphysical doubt as to the material facts'; he 'must produce specific evidence, through affidavits or admissible discovery material, to show that' there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor." *Id.* (quoting *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002)).

### B.   Plaintiff Was An Exempt Employee Pursuant To The Motor Carrier Act

Employment does not guarantee or require the payment of a premium wage for overtime. Congress has exempted various categories of employees from the FLSA overtime requirements, including those subject to the MCE:

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

> The provisions of [FLSA] section 207 of this title shall not apply with respect to--
> (1) any employee with respect to whom the Secretary of Transportation has power
> to establish qualifications and maximum hours of service pursuant to the provisions
> of section 31502 of Title 49.

29 U.S.C. § 213(b)(1).

In determining whether the MCE applies to a particular individual, courts in this Circuit use a two prong test: "the employee must be (1) employed by an employer subject to the jurisdiction of the Secretary of Transportation, and (2) 'engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.'" *Montoya*, 2015 WL 1469752 at *3 (quoting 29 C.F.R. § 782.3(a)).

In addition, the U.S. Department of Labor has determined that, for the MCE to be applicable, the motor vehicle at issue cannot fall into the small vehicle exception, which applies to vehicles weighing 10,000 pounds or less. *See, e.g., Santana v. Lykes Exclusive, LP*, No. 12-22013-CIV, 2013 WL 1001850, at *3 (S.D. Fla. Mar. 13, 2013) (citing a DOL bulletin and noting that "the Motor Carrier Exemption does not apply to a driver … in any workweek in which their work affects the safe, interstate operation of motor vehicles weighing 10,000 pounds or less").

The undisputed material facts now before this Court, based almost exclusively on Plaintiff's own admissions, conclusively establish that his overtime claims are precluded by the MCE.

### 1.      *Lazer Spot Is A Motor Carrier Subject To The Jurisdiction Of The Secretary Of Transportation*

The Secretary of Transportation has jurisdiction over "motor carriers" and "motor private carriers." 49 U.S.C. § 31502(b). "Motor Carrier" means "a person providing motor vehicle transportation for compensation." *See* 49 U.S.C. § 13102(14); *see also Dalton v. Sabo, Inc.*, No. CIV 09-358-AA, 2010 WL 1325613, at *3 (D. Or. Apr. 1, 2010) (finding employer to be a motor carrier under the Motor Carrier Act because it "provide[d] motor vehicle transportation,

including motor vehicles exceeding 10,000 pounds, for compensation in interstate commerce.")
The Act defines a "motor vehicle" as a "vehicle, machine, tractor, trailer, or semitrailer propelled
or drawn by mechanical power and used on a highway in transportation, or a combination
determined by the Secretary [of Transportation]." 49 U.S.C. § 13102(16).

Lazer Spot is a "motor carrier" as defined by the Act. First, the fact that Lazer Spot is
licensed with the DOT and has Federal Motor Carrier Safety Administration authorization
necessary to be an interstate carrier conclusively establishes that the DOT has jurisdiction over
the Company. *See Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir.
1991) (per curiam) ("In fact, the permit issued by the [DOT] indicates that jurisdiction has
already been exercised. Thus, it is clear that [defendant] is a motor carrier subject to the
Secretary's jurisdiction.") (internal citation omitted). Second, Lazer Spot received compensation
from its clients to transport goods. (Wilcox Decl. at ¶ 4.). Third, Plaintiff operated a truck
weighing over 10,000 pounds. (Featherston Dep. at 18:23-19:4; Aldan Decl. at ¶ 9.) Fourth, as
discussed in greater detail below, the transportation is interstate in nature because the goods
moved by Lazer Spot are shipped to out-of-state destinations.

Plaintiff admitted that Lazer Spot is a motor carrier subject to the requirements of the
DOT. (Featherston Dep. at 35:7-15 (testifying he is aware that Lazer Spot is a federal motor
carrier and is governed by the rules applicable to businesses that are motor carriers).) Thus, there
can be no material issue of fact on this prong of the MCE test.

2. ***Plaintiff Was Engaged In Activities Of A Character Directly Affecting The Safe Operation Of Motor Vehicles In The Transportation On The Public Highways Of Property In Interstate Commerce Within The Meaning Of The Motor Carrier Act***

   a. *Plaintiff Worked for Lazer Spot As A Driver*

While the MCE applies to numerous types of jobs,[10] the exemption is most obviously applicable to the actual drivers of motor vehicles. *See* 29 C.F.R. § 782.3 (defining "driver" as "an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce").  Courts have routinely held that, as a matter of law, employees who drive motor vehicles affect the safety of operation of motor vehicles as required to satisfy the second prong of the MCE. *See, e.g.*, *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 685 (1947); *Morris v. McComb*, 332 U.S. 422, 436-38 (1947). Moreover, the applicable regulations make clear that an exempt employee need not perform such safety-affecting job duties in each work week:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers…) called upon in the ordinary course of his work to perform, *either regularly or from time to time*, safety-affecting activities…, he comes within the exemption in all workweeks when he is employed at such job … [t]he rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, *and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."*

29 C.F.R. § 782.2(3) (emphases added).

Lazer Spot hired Plaintiff as a driver.  (Featherston Dep. at 14:21-15:3, 39:4-16; Aldan Dep. at 18:15-19.)  Plaintiff was subject to various FMCSR and Lazer Spot requirements imposed on drivers to maintain the safety of public roads.  (Wilcox Dep. at 21:18-22:16, 22:25-23:23.)  Pursuant to the FMCSR, Lazer Spot performed pre-hire checks on Plaintiff, Plaintiff had and maintained a commercial driver's license the entire time he worked for Lazer Spot, Plaintiff

---

[10] *See* U.S. Dept. of Labor Fact Sheet #19, *available at* http://www.dol.gov/whd/regs/compliance/whdfs19.pdf (last visited January 12, 2018) (hereinafter "DOL Fact Sheet #19") (noting that the MCE may also apply to a driver's helpers, loaders, and mechanics); *see also Hernandez v. Brink's, Inc.*, No. 08-20717-CIV, 2009 WL 113406, at *3-4 (S.D. Fla. Jan. 15, 2009) (discussing the applicability of the MCE to drivers and drivers' helpers).  Attached hereto at Exhibit 7.

passed a DOT physical examination, passed a road test, and during each year of Plaintiff's employment with Lazer Spot, the Company confirmed Plaintiff's driving record by obtaining a copy of Plaintiff's motor vehicle report. (Aldan Decl. at ¶ 3)  Plaintiff was also required to conduct pre-trip safety inspections every day he operated the commercial motor vehicle. (*Id.*)  In addition to the FMCSR requirements, Lazer Spot required Plaintiff to participate in new driver training and training regarding the safe operation of a vehicle on public roads. (Featherston Dep. at 71:24-74:21, 79:10-80:2, Ex. 6 at LSF 000046-48; Aldan Decl. at ¶ 4, Ex. B.)  Plaintiff, like other drivers, was subject to immediate termination of his employment for: (i) citations for serious moving violations and/or reckless driving; (ii) failure to notify the company within 48 hours of any moving violation or license suspension; (iii) leaving the scene of an accident; or (iv) taking an unauthorized passenger in a company or customer-owned or leased vehicle. (Featherston Dep. at 61:11-24, Ex. 5 at LSF 000251.)  The purpose of these immediate termination policies was to keep drivers safe on public roads. (*Id.* at 61:25-62:2.)

In short, Plaintiff testified that he worked as a driver, that he participated in training to ensure he performed his driving duties in a safe manner, and that he was subject to immediate termination for safety-related infractions. (Featherston Dep. at 14:21-15:3, 39:4-16, 61:25-62:2, 71:24-74:21, 79:10-80:2, Ex. 6 at LSF 000046-48.)  There can be no dispute that Plaintiff engaged in activities that directly affected the safety of operation of motor vehicles.

### b.   *Plaintiff Routinely Drove On Public Roads*

As a driver for Lazer Spot, Plaintiff regularly transported trailers containing CHEP pallets over public roads. (Featherston Dep. at 60:17-24, 76:3-77:14, Ex. 5 at LSF 000242.) Plaintiff admitted that he drove Lazer Spot vehicles on public roads no less than once per month, and that he often made the trip much more frequently. (*Id.* at 29:18-30:11.)  Company documents indicate that Plaintiff averaged more than three CHEP runs per month. (Aldan Decl. at ¶ 7, Ex. C.) He drove from the Americold and Unilever sites to the Greatwide facility and back, which took approximately one and one-half hours to complete. (*Id.* at 28:23-29:3, 105:17-106:10.)   The entire trip was on public roads, including but not limited to U.S. Highway 95,

Charleston Boulevard, Lamb Boulevard, and Cheyenne Avenue. (Featherston Dep. at 22:17-23:19; Plaintiff's Answer to Interrogatory No. 5.) Plaintiff sometimes made several trips per day, and, as a result, he would sometimes spent four to five hours of a single shift driving over public roads between the Americold/Unilever site and the Greatwide facility transporting pallets. (Featherston Dep. at 104:22-106:13.)

Plaintiff admitted that, as a driver for Lazer Spot, he regularly traveled over public roads in Lazer Spot vehicles. Accordingly, there is no dispute of fact that he satisfies this aspect of the MCE.

c.      *Plaintiff Transported Goods In Interstate Commerce*

It is equally clear that Plaintiff transported goods over public roads in interstate commerce. He transported CHEP pallets from the manufacturer to Americold and Unilever, and, as he acknowledged, these pallets were then transported out of state by another carrier within hours or days after he dropped them off at the client sites. (Featherston Dep. at 28:3-29:17, 51:20-53:16.) Consequently, the goods Plaintiff transported on public roads remained in the continuous flow of interstate commerce.

As an initial matter, the CHEP pallets qualify as a type of good in interstate commerce. *See, e.g., Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992) ("The regular pick up of empty containers destined for out-of-state bottling facilities has been held to both place employees in interstate commerce and exempt them from the overtime provisions of the FLSA under the motor carrier exemption."); *Taylor v. Cargill Meat Sols. Corp.*, No. 3:09-cv-299-WHB-LRA, 2010 WL 2925688, at *6 (S.D. Miss. June 4, 2010) ("Courts [have] routinely found that the act of retrieving and returning shipping containers to out-of-state locations constitutes interstate commerce for the purpose of the motor carrier exemption."); *see also* Opinion Letter of Office of Enforcement Policy, Fair Labor Standards Act Team, 1999 DOLWH LEXIS 13 (Feb. 10, 1999) (presence of pallets and reusable plastic shells in interstate commerce triggered the exemption).[11]

---

[11] Attached hereto at Exhibit 8.

While Plaintiff did not transport the CHEP pallets across state lines, transportation within a single state is "interstate" in nature if it forms a part of a "practical continuity of movement" across state lines from the point of origin to the point of destination. *In re Bimbo Bakeries USA FLSA Actions*, No. C 05-00829 JW, 2008 WL 10850153, at *4 (N.D. Cal. Oct. 24, 2008); *see also Guinn v. Sugar Transp. of the Nw., Inc.*, No. 2:16-325-WBS-EFB, 2017 WL 6513306, at *3 (E.D. Cal. Dec. 20, 2017) ("[T]he fact that the drivers may not have left California does not mean that none of them engaged in interstate commerce[.]").  As the applicable regulations state, while "[h]ighway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce … [t]he result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of [the FLSA and the MCA]; the fact that other carriers transport it out of or into the State is not material.")  29 C.F.R. § 782.7(b)(1); *see also* U.S. Department of Labor Wage and Hour Division's Field Operations Handbook 24b00 ("The movement of trucks, tractors, or trailers (either empty or loaded) over the public highways between loading platforms, the garage, storage facilities or terminals, where such movement is either the beginning or continuation of an interstate or foreign journey, is itself transportation in interstate or foreign commerce subject to the jurisdiction of the DOT.")[12]

Courts in this Circuit have routinely applied the MCE to drivers who complete one portion of a shipment in interstate commerce, as Plaintiff did for Lazer Spot. *See Montoya*, 2015 WL 1469752 at *5 (holding that a delivery driver who performed the last leg of interstate deliveries of goods sold by Home Depot and manufactured in several locations throughout the United States and Mexico was engaged in interstate commerce); *Bell v. Foster Poultry Farms*, No. CV-F-05-1539-LJO-SMS, 2007 U.S. Dist. LEXIS 25328, at *3 (E.D. Cal. Mar. 22, 2007) (holding that drivers who drove only within California were exempt pursuant to the MCE where the "goods transported by plaintiffs are intended for out of state commerce"); *Ruiz v. Affinity*

---

[12] Attached hereto at Exhibit 9.

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

*Logistics Corp.*, No. 05CV2125 R (CAB), 2006 WL 3712942, at *8 (S.D. Cal. Nov. 9, 2006) (holding that a delivery driver's in-state transportation of appliances was, as a matter of law, transportation in interstate commerce because it was the last leg of what Sears, at the time of the shipment from the manufacturer, intended to be a journey of the appliances in interstate commerce).

Plaintiff completed one leg—the first leg—of a larger interstate shipment of CHEP pallets. The interstate shipment was triggered when a buyer such as a grocery store, ordered ice cream manufactured and distributed by Unilever/Americold. (Aldan Decl. at ¶ 6.) In order to ship the ice cream, Unilever/Americold required pallets. (*Id.* at ¶ 5; Aldan Dep. at 47:2-16; Featherston Dep. at 54:7-9.) In response to requests from Unilever/Americold, Plaintiff picked up the pallets and delivered them to the Unilever and Americold where they were "swiftly" loaded with ice cream. (Featherston Dep. at 50:19-51:19, 52:19-53:5, 54:12-14, 55:13-18; Aldan Decl. at ¶ 6.) Both the pallets and the ice cream were bound for destinations throughout the United States. Trailers loaded with the ice cream-laden pallets were picked up by non-Lazer Spot drivers who, in many cases, took the goods out of Nevada on the next leg of their journey. (Featherston Dep. at 51:20-52:24; Aldan Decl. at ¶ 6.) In fact, Plaintiff admitted that the pallets he picked up and transported over public roads were subsequently loaded with ice cream and delivered to destinations outside of Nevada:

> Q.  And the ice cream that was headed off to those other states were loaded on top of the pallets?
> A.  Yes, sir.
> Q.  And those pallets are the runs that you retrieved from the -- from the CHEP location?
> A.  Yes, sir.
> Q.  Greatwide?
> A.  Yes, sir.
> Q.  And those pallets would come through from Greatwide to Unilever or Americold and then head out to another state packed with ice cream?
> A.  Yes, sir.

(Featherston Dep. at 52:19-53:5.)

Moreover, Plaintiff admitted that the CHEP pallets moved "swiftly" through the Americold and Unilver facilities. (Featherston Dep. at 53:6-9.) Plaintiff testified that some of

the pallets would be loaded with ice cream and shipped out of state the same day he picked the pallet up at Greatwide. (*Id.* at 92:18-93:1.) The Americold facility could go through an entire trailer of pallets within two days, meaning that on those occasions, none of the pallets Plaintiff delivered to Americold sat at the facility for longer than two days. (*Id.* at 53:14-16.) The Supreme Court has made it clear that "[a] temporary pause [in a warehouse] does not mean that [the goods] are no longer "in commerce" within the meaning of the [motor carrier act]." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943); *see also Bishop v. Petro-Chemical Transp., LLC*, 582 F. Supp. 2d 1290, 1302-03 (E.D. Cal. 2008) ("Once the goods enter into 'the channels of interstate commerce,' a halt in the movement of the goods does not necessarily mean that they are no longer in interstate commerce … [i]nstead, if the stop represents 'a convenient intermediate step in the process of getting them to their final destinations, [the goods] remain 'in commerce' until they reach those points.'") (internal citations omitted).

In sum, the undisputed evidence demonstrates that Plaintiff regularly engaged in activities that directly affected the safety of operation of motor vehicles in the transportation on the public highways of property in interstate commerce within the meaning of the MCE.

> d.   *Plaintiff engaged in interstate commerce activities with sufficient frequency to qualify for the MCE*

Plaintiff may argue that he spent more of his time working within the Americold facility than on public roads engaged in interstate activities. Even if true, this would have no bearing on the MCE analysis in this case. An individual need not engage in interstate activities every day, week, or even every month to qualify for the MCE. Courts have routinely held that even employees who only engage in interstate activity once every four months are subject to the exemption. *See, e.g., Ballou v. DET Dist. Co.*, No. 3-03:1055, 2006 WL 2035729, at *14 (M.D. Tenn. July 17, 2006) ("Where a carrier has been shown to operate in interstate commerce, the Secretary of Transportation will assert jurisdiction over an employee for a 4-month period beginning on the last date the employee could have been called upon to make an interstate run."); *Songer v. Dillon Res., Inc.*, No. 4:08-CV-319-A, 2009 WL 1759553, at *5 (N.D. Tex. June 19,

2009) ("[A] driver is subject to the jurisdiction of the Secretary, and thus under the [MCA] exemption, for a '4-month period from the date of the proof' that he was, or could have been, called upon to engage in interstate commerce."), *aff'd*, 618 F.3d 467 (5th Cir. 2010); *Bannen v. Liebert Corp.*, No. CV 01-0490, 2003 U.S. Dist. LEXIS 27939, at *16 (E.D.N.Y. May 28, 2003) ("[E]ven if Plaintiffs had proffered evidence to support their claims, they would have to show that Defendants, not Plaintiffs, went an entire 4-month period without engaging in some interstate activity.  This emphasis on the 'carrier,' rather than the individual plaintiff, is important because it reemphasizes the fact that the Court's central inquiry focuses upon whether Plaintiffs 'regularly travel interstate or reasonably are expected to do interstate driving.'") (quoting *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 417 (3d Cir. 1992)); DOT, Fed. Highway Admin., 46 Fed. Reg. 37902, 37903 (July 23, 1981) (Under the DOT's "4-month rule" enforcement policy, a driver who has not worked on any interstate shipment or vehicle in a workweek remains subject to Secretary of Transportation's authority, and thus potentially exempt, if (i) the carrier is shown to have involvement in interstate commerce, and (ii) the employee could reasonably have been expected to perform in the carrier's interstate activity. Where such conditions are met, the Secretary of Transportation may assert jurisdiction over the employee for a 4-month period beginning on the last date that the employee could have been called upon to, or actually did, engage in the carrier's interstate activity.).

### 3.   *The Motor Carrier Act's "Small Vehicle Exception" Is Not Applicable*

As shown above, the undisputed facts of this case establish that this Circuit's two prong test used to determine the applicability of the MCE has been satisfied.  Therefore, the only remaining question is whether the small vehicle exception to the MCE is applicable.  This determination turns on whether Plaintiff operated a motor vehicle weighing 10,000 pounds or less. *See Santana v. Lykes Exclusive, LP*, No. 12-22013-CIV, 2013 WL 1001850, at *2 (S.D. Fla. Mar. 13, 2013); DOL Fact Sheet #19.

Plaintiff admitted that the vehicles he drove as a driver for Lazer Spot weighed in excess of 10,000 pounds, and documents produced by Lazer Spot confirm this fact. (Featherston Dep.

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

at 18:23-19:4; *see also* Aldan Decl. at ¶ 9, Ex. E.)  Therefore, the small vehicle exception's simple and objective test is not met, and Plaintiff remains subject to the MCE.

Since Plaintiff was unequivocally subject to the MCE, his overtime claim under the FLSA fails as a matter of law and this Court should grant Defendant's Motion for Summary Judgment with respect to this claim.

**C.      Plaintiff Was An Exempt Employee Under Nevada State Law**

Plaintiff also brought a claim under state law, which is based on the same purported misclassification that forms the basis of his FLSA claim.  Specifically, Plaintiff alleges that Lazer Spot violated N.R.S. § 608.018(1), which requires employers to pay one and one-half times an employee's regular wage rate whenever an employee works more than 40 hours in a week or more than 8 hours in a day.  The provisions of the state law do not apply, however, to "[d]rivers, drivers' helpers, loaders and mechanics for motor carriers subject to the Motor Carrier Act of 1935, as amended."  N.R.S. § 608.018(3)(f); *see also Gonzales v. State*, 2015 Nev. App. LEXIS 7, at *25 (Nev. App. July 2, 2015) (noting that when there is no substantive reason to break with federal courts, judicial efficiency "implores us to use the same test as the federal courts under the [Fair Labor Standards Act]") (quoting *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 957 (Nev. 2014)).

As described above, Plaintiff's FLSA claim fails because Lazer Spot properly classified him as an exempt employee pursuant to the MCE.  Plaintiff's state law overtime claim fails for the same reason, and this Court should grant Defendant's Motion for Summary Judgment all Plaintiff's claims.

**IV.      CONCLUSION**

For the reasons stated above, Lazer Spot requests that the Court grant summary judgment in its favor and dismiss Plaintiff's claims, with prejudice.

Dated: January 12, 2018.                    Respectfully submitted,

                                                     /s/ Jeffrey L. Glaser_____

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

Brett C. Bartlett
* *Admitted Pro Hac Vice*
*Seyfarth Shaw LLP*
Jeffrey L. Glaser
* *Admitted Pro Hac Vice*
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Michael C. Mills
Nev. Bar. No. 003534
Aileen E. Cohen
Nev. Bar. No. 005263
Bauman Loewe Witt & Maxwell, PLLC
3650 North Rancho Drive, Suite 114
Las Vegas, Nevada 89130
Telephone: (702) 240-6060
Facsimile: (720) 240-4267

Counsel for Defendant
LAZER SPOT, INC.

DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 12, 2018, I filed **DEFENDANT LAZER SPOT, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Christian James Gabroy
Kaine M. Messer
Gabroy Law Offices
170 South Green Valley Parkway
Suite 280
Henderson, NV 89012

_s/ Jeffrey L. Glaser_
Jeffrey L. Glaser
Counsel for Defendant