UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LEPATRICK FEATHERSTON, on behalf of himself and all those similarly situated,<br><br>Plaintiff<br><br>v.<br><br>LAZER SPOT, INC.,<br><br>Defendant | Case No.: 2:17-cv-01221-APG-GWF<br><br>**Order Granting Defendant's Motion for Summary Judgment and Closing Case**<br><br>(ECF Nos. 30, 35) |

Plaintiff LePatrick Featherston filed this putative class action against Lazer Spot, Inc., for allegedly failing to pay overtime wages required under the Fair Labor Standards Act (FLSA) and Nevada law. The parties are familiar with the facts in this case so I will not repeat them here except where necessary. In brief, when Featherston worked for Lazer Spot, he spent a portion of his time driving pallets to warehouses in Nevada owned by UniLever and Americold. When Featherston arrived at the warehouses, the pallets would be loaded with ice cream. Another driver would then pick up the loaded pallets and drive them throughout the country for distribution. Lazer Spot moves for summary judgment, arguing that Featherston is exempt from the FLSA's and Nevada's overtime requirements under the Motor Carrier Act of 1935 (MCA).[1] Featherston primarily contends that he is not exempt because he did not engage in interstate commerce as required by the MCA. I find that the MCA exemption does apply and thus grant Lazer Spot's motion for summary judgment.

---

[1] ECF No. 30.

## I.  Analysis

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A fact is material if it "might affect the outcome of the suit under the governing law."[3]  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact.[5]  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine factual dispute for trial.[6]  I view the evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

The FLSA requires employers to pay a minimum wage and overtime to employees who are "employed in an enterprise engaged in commerce."[8]  An employer who violates these provisions is liable for the unpaid wages and overtime of the affected employees, plus an equal amount as liquidated damages.[9]  Congress has exempted various categories of employees from the FLSA overtime requirements, including employees subject to the MCA.[10]  An employee is

---

[2] Fed. R. Civ. P. 56(a), (c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).

[7] *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

[8] 29 U.S.C. §§ 206, 207.

[9] *Id.* at § 203(d).

[10] *See id.* at § 213(b)(1) ("The provisions of [FLSA] section 207 . . . shall not apply with respect to (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.").

exempt under the MCA if he (1) is employed by an employer that is subject to the Secretary of Transportation's jurisdiction, and (2) "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]."[11]

### A. Lazer Spot was subject to the Secretary of Transportation's jurisdiction.

The Secretary of Transportation has jurisdiction over "motor carriers" and "motor private carriers."[12] A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation."[13] Lazer Spot is licensed with the Department of Transportation and has Federal Motor Carrier Safety Administration authorization necessary to be an interstate carrier.[14] Lazer Spot also presents evidence establishing that it receives compensation from its clients to transport goods.[15] Featherston does not dispute that the Secretary of Transportation has jurisdiction over Lazer Spot. Thus, the undisputed evidence shows that Lazer Spot is a motor carrier subject to the Secretary of Transportation's jurisdiction.

### B. Featherston's employment qualifies under the second prong.

#### 1. *Featherston transported goods in interstate commerce.*

It is undisputed that Featherston never crossed state lines to transport any goods for Lazer Spot. But under the MCA, transportation within a single state is considered "interstate" in nature

---

[11] 29 C.F.R. § 782.2(a).

[12] 49 U.S.C. § 31502(b).

[13] *Id.* at § 13102(14).

[14] *See Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (per curiam) ("In fact, the permit issued by the Department of Transportation indicates that jurisdiction has already been exercised. Thus, it is clear that [the defendant] is a motor carrier subject to the Secretary's jurisdiction.") (internal citation omitted).

[15] ECF No. 30-2 at 3.

if it forms a part of a "practical continuity of movement" across state lines from the point of origin to the point of destination.[16] To determine whether single-state transportation is part of interstate commerce, I "must examine the character of the shipments [the plaintiff] was charged with delivering, and the intent of the shippers as to the ultimate destination of the goods."[17] "The interstate or intrastate character of the shipment is determined only after considering the entire panoply of facts and circumstances surrounding the transportation."[18]

Lazer Spot presents evidence showing that while Featherston did not drive over state lines, he completed the first leg of a larger interstate shipment of goods. Featherston testified that he drove empty pallets to Unilever and Americold warehouses, and that those pallets were then loaded with ice cream and shipped throughout the country.[19] Featherston testified that he knew the shipments were bound for out-of-state destinations because the invoices he saw included the ultimate destinations.[20] He also kept in contact with some of the drivers that picked up the loaded pallets and continued the shipments outside of Nevada after Featherston's job was

---

[16] *Watkins v. Ameripride Servs.*, 375 F.3d 821, 826 (9th Cir. 2004) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943)); *see also* 29 C.F.R. § 782.7(b)(1) ("Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce . . . . The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce; . . . the fact that other carriers transport it out of or into the State is not material."); U.S. Dep't of Labor Wage and Hour Division's Field Operations Handbook 24b00 ("The movement of trucks, tractors, or trailers (either empty or loaded) over the public highways between loading platforms, the garage, storage facilities or terminals, where such movement is either the beginning or a continuation of an interstate or foreign journey, is itself transportation in interstate or foreign commerce subject to the jurisdiction of the DOT.").

[17] *Watkins*, 375 F.3d at 825 (citing *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997)).

[18] *Id.* (internal quotations omitted).

[19] ECF No. 30-1 at 26–28.

[20] *Id.*

done.[21] Featherston testified that the pallets were "swiftly" loaded with ice cream and would sometimes set off for their out-of-state destinations on the same day he dropped off the empty pallets.[22] On other occasions, the loaded pallets would sit for a few days to a few weeks before being picked up for transportation outside of Nevada.[23]

Featherston contends that his testimony is insufficient to show that his transportation throughout Nevada was part of a practical continuity of interstate movement. He argues that Lazer Spot failed to identify the specific out-of-state customers who ordered the ice cream, and therefore did not meet its burden to show that the products were part of continuous transportation outside of Nevada. Featherston relies on the Ninth Circuit's opinion in *Watkins v. Ameripride Services* to argue that this showing is necessary.[24] There, the plaintiff submitted an affidavit stating that, when he delivered products to a warehouse within the same state, they had no determined destination.[25] Instead, the products would sit in the warehouse until a customer put in an order for them.[26] So, because "the materials delivered by [the plaintiff] were fungible, and were taken from general inventory after the customer made an order," the plaintiff's deliveries were not part of a continuous interstate shipment.[27]

Even viewing the evidence in a light most favorable to Featherston, there is no genuine dispute that Featherston's deliveries do not suffer from the same infirmities discussed in *Watkins*.

---

[21] *Id.* 26–27.
[22] *Id.* at 44–45.
[23] *Id.* at 28.
[24] *See* ECF No. 33 at 5–6 (citing *Watkins*, 375 F.3d 821).
[25] *Watkins*, 375 F.3d at 827.
[26] *Id.*
[27] *Id.*

Lazer Spot produced evidence showing that, "in response to customer orders for ice cream," the ice cream warehouses would request a Lazer Spot driver to pick up empty pallets and drive them to the warehouses for loading.[28] Lazer Spot maintains "daily gate schedules" for their deliveries to Americold's warehouses that include information on the carrier that is responsible for transporting the ice cream after Lazer Spot's pallets are loaded.[29] Lazer Spot's Nevada-Area Manager states that, based on the name of the carrier listed on the gate schedules, she can confirm that many of those shipments traveled out of state.[30] Lazer Spot's evidence demonstrates that Featherston's deliveries were part of pre-determined, continuous, interstate shipments, and Featherston presents no evidence to dispute that conclusion. So, no genuine dispute remains that Featherston's job duties included transporting goods in interstate commerce within the meaning of the MCA exemption.

### 2. Featherston's position affected the safety of operation of motor vehicles.

For an employer to avoid overtime wage requirements under the MCA exemption, the employee in question must perform work as a driver, driver's helper, loader, or mechanic.[31] Lazer Spot contends that Featherston qualifies as a driver. A driver "is an individual who drives a motor vehicle in transportation which is, within the meaning of the [MCA], in interstate or foreign commerce."[32] Courts have routinely held as a matter of law that employees who drive motor vehicles affect "the safety of operation of motor vehicles" to satisfy the MCA.[33] Lazer

---

[28] *See* ECF No. 30-5 at 3.

[29] *Id.* at 4.

[30] *Id.*

[31] 29 C.F.R. § 782.2.

[32] *Id.* at § 782.3.

[33] *See e.g., Morris v. McComb*, 332 U.S. 422, 436–38 (1947); *Levinson v. Spector Motor Servs.*, 330 U.S. 649, 685 (1947); *Anderson v. Timber Prods. Inspection, Inc.*, 334 F. Supp. 2d 1258,

6

Spot also produces evidence demonstrating that Featherston was subject to various requirements Lazer Spot imposed on drivers to maintain the safety of public roads.[34]

Featherston first argues that he is not a "driver" under the act because he "did not operate any motor vehicle within 'interstate or foreign commerce' as the definition requires."[35] As discussed above, Featherston's role in interstate shipments qualifies as transportation in interstate commerce under the MCA, so that argument is unavailing. Featherston does not dispute that Lazer Spot hired him as a driver, and that he transported materials in Nevada that were "swiftly" shipped out of state. Featherston's job duties fall within the MCA's "driver" definition.

Featherston next argues that his job duties did not directly affect the "safety of operation of motor vehicles in transportation on public highways."[36] He contends that Lazer Spot's evidence regarding the safety training and requirements he was required to complete is insufficient to show that his job directly affects the safe operation of motor vehicles.[37] But the United States Supreme Court has long held that the act of driving large motor carriers itself qualifies as an act that directly affects the safety of motor vehicle operations.[38] So, no genuine dispute remains that Featherston's duties as a driver of large commercial vehicles directly affect the "safety of operation of motor vehicles."

---

1262–63 (D. Or. 2004) ("The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations.") (internal citations omitted).

[34] *See* ECF Nos. 30-8 at 3–6; 30-5 at 3.

[35] ECF No. 33 at 8.

[36] *Id.* at 8–9 (quoting 29 C.F.R. § 782.2(a)).

[37] *Id.*

[38] *See Levinson*, 330 U.S. at 685 (holding that a "driver's work . . . obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving . . . .").

7

Lazer Spot contends, and Featherston does not dispute, that transporting empty pallets qualifies as transporting goods or property in interstate commerce under the MCA.[39] Lazer Spot also presents undisputed evidence that Featherston operated motor vehicles on public highways within Nevada.[40] Lazer Spot has thus demonstrated there is no genuine dispute that it is subject to the Secretary of Transportation's jurisdiction and that Featherston (1) was a driver within the MCA's meaning, (2) transported property in interstate commerce using public highways, and (3) directly affected the safety of operation of motor vehicles. I therefore grant summary judgment in Lazer Spot's favor on Featherston's FLSA claim because his position was exempt from the FLSA's overtime requirements under the MCA.

### C. Featherston was an exempt employee under Nevada law.

Featherston also brings a claim under Nevada Revised Statutes § 608.018(1), which requires employers to pay one and one-half times an employee's regular wage rate whenever an employee works more than 40 hours in a week or more than 8 hours in a day. The provisions of the state law do not apply, however, to "drivers, driver's helpers, loaders, or mechanics for motor carriers subject to the [MCA]."[41] Because Lazer Spot is subject to the MCA (and Featherston's position is exempt under the MCA with respect to his FLSA claims), Featherston is also an

---

[39] ECF No. 30 at 13. *See*, *e.g.*, *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992) (holding that "[t]he regular pick up of empty containers destined for out-of-state bottling facilities has been held to both place employees in interstate commerce and exempt them from the overtime provisions of the FLSA under the motor carrier exemption") (citing *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42–43 (5th Cir. 1962); *Walling v. Silver Bros.*, 136 F.2d 168, 171 (1st Cir. 1943)).

[40] *See* ECF No. 30-1 at 9–10, 15–17, 33, 40.

[41] Nev. Rev. Stat. § 608.018(3)(f).

exempt employee under Nevada law.[42]  I thus grant summary judgment to Lazer Spot on Featherston's state law claim.

## II.   Conclusion

IT IS THEREFORE ORDERED that Lazer Spot's motion for summary judgment **(ECF No. 30) is GRANTED.**

IT IS FURTHER ORDERED that Lazer Spot's motion for leave to file a notice of supplemental authority **(ECF No. 35) is GRANTED.**

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment in favor of the defendant and against the plaintiff.

DATED this 27th day of August, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[42] *See Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 957 (Nev. 2014) ("[H]aving no substantive reason to break with federal courts on this issue, judicial efficiency implores us to use the same test as the federal courts under the FLSA.") (internal quotations omitted).